IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**RORY A. RIVERA GONZÁLEZ, et al.,**
    **Plaintiffs,**

    v.

**SCHNEIDER ELECTRIC BUILDINGS AMERICAS, INC., A/K/A TAC, INC.,**
    **Defendant.**

Civil Action No. 10-1876 (GAG)

## OPINION AND ORDER

    Plaintiff in this matter, Rory A. Rivera González ("Rivera"), commenced this action seeking compensatory damages for acts of alleged discrimination committed against him in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq*. Rivera also invokes the supplemental jurisdiction of this court to bring claims under Puerto Rico's Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, §§ 146 *et seq*. ("Law 100"), Law No. 100 of July 2, 1985, as amended, P.R. Laws Ann. tit. 1, §§ 501 *et seq*. ("Law 44"), P.R. Law No. 115 of December 20, 1991, as amended, P.R. Laws Ann. tit. 29, § 194 ("Law 115"), P.R. Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, §§ 185(a) *et seq*. ("Law 80"), and Article 1802 of the Civil Code of the Commonwealth of Puerto Rico ("Art. 1802"), P.R. Laws Ann. tit. 31, § 5141.

    This matter is presently before the court on the defendant's motion for partial dismissal of the complaint (Docket No. 22), which was timely opposed by the plaintiffs (Docket No. 26). After reviewing the pleadings and pertinent law, the court **GRANTS** in part and **DENIES** in part the defendant's motion to dismiss, granting the plaintiffs leave to amend their complaint.

**Civil No. 10-1876 (GAG)**                                        2

## I.   Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'"  Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P.8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense.  Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56).  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal, 129 S. Ct. at 1950.

## II.   Relevant Factual and Procedural Background

Rivera began working for Schneider Electric Buildings Americas, Inc., a/k/a Tac, Inc. ("Defendant") in January 2008, as Project Manager for the security systems being implemented at the Luis Muñoz Marín Airport.  Rivera was in charge of the project's logistics, including managing the incidents, the itineraries, and the implementation of costs, as well as supervising personnel.

**Civil No. 10-1876 (GAG)**                               3

In March 2008, Rivera began to experience severe health complications. First, he was diagnosed with a chronic condition of thrombosis, and was later diagnosed with an abdominal tumor that affected his intestines and bladder. Despite his health problems, Rivera continued to work and received an excellent work evaluation as Project Manager. Mr. Sam Belbina ("Belbina") was later brought in as Regional Vice President, and became Rivera's direct supervisor. In November 2008, Rivera was hospitalized in order to have his tumor surgically removed. As a result he was unable to return to work for approximately one (1) month.

Rivera alleges that while he was convalescing Defendant stopped paying his salary. He further avers that Belbina began to pressure him to return to work. Due to Belbina's alleged harassment Rivera returned to work in January 2009, against his doctor's recommendation. When he returned to work, Rivera was instructed by Belbina to engage in what he believed to be unlawful employment practices. He was told to replace an engineer without just cause, to dismiss a secretary without just cause, and to reduce the salary of several employees arbitrarily and without justification. Rivera also alleges to have informed Belbina of the illegality of such acts and Belbina insisted that Rivera implement them. When Rivera refused, Belbina allegedly began to harass, retaliate, and discriminate against him.

On March 16, 2009, Defendant terminated Rivera's employment due to alleged under-performance. Rivera believes this reason to be false and pretextual, since no performance review was ever conducted after he received an excellent review on his first evaluation and was later promoted. During his employment Rivera was never reprimanded, nor did he ever receive a disciplinary memorandum related to his supposed under-performance. On the same day that Rivera was discharged, Belbina hired Mr. Juan Carlos Narvaez, as his replacement as Project Manager. Juan Carlos Narvaez was 32 years of age at that time.

Rivera claims that he was terminated as a result of his age and disability. On April 21, 2009, Rivera filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right-to-sue letter, Rivera filed this complaint, alleging discrimination

**Civil No. 10-1876 (GAG)**                    4

by reason of national origin, age, and disability, as well as retaliation and unjust dismissal, all in violation of his civil rights.

### III. Discussion

In its motion to dismiss, the defendant avers that Rivera failed to exhaust administrative remedies before seeking judicial relief as required by Title VII, ADEA and ADA.  Also, Defendant avers that the plaintiff's claims under Title VII, the ADA, and Law 115, do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal,129 S. Ct at 1937.

### A.   Failure to Exhaust Administrative Remedies Claim

#### 1.   *Retaliation, Harassment and Failure to Accommodate Claim*

In its motion to dismiss, Defendant avers that Rivera's administrative charge, filed before the EEOC, failed to state a claim of retaliation, and therefore, he is now barred from raising said claim.

Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination.  42 U.S.C. § 2000e; Thornton v. United Parcel Service, Inc., 587 F.3d. 27, 31 (1st Cir. 2009).  In order to confer federal courts with jurisdiction, an aggrieved employee "must file his charge with the E.E.O.C. within 180 days of the alleged discriminatory conduct or within 300 days if the person aggrieved has initially instituted proceedings with a state or a local agency with authority to grant or seek relief from such practice." Martínez-Jordán v. Baxter Healthcare Corp., 608 F. Supp. 2d 224, 238 (D.P.R. 2009).  The purpose of this requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). Pursuant to that purpose courts have consistently held that "in employment discrimination cases, the scope of the civil complaint is limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Thornton, 587 F.3d. at 31 (citing Powers v. Grinnell Corp, 915 F.2d 34, 37-38 (1st Cir. 1990)) "The purpose would be frustrated if the employee were permitted to allege one thing in his administrative charge and later allege something

**Civil No. 10-1876 (GAG)**                                5

entirely different in a subsequent civil action." See Lattimore, 99 F.3d at 464.

In his administrative charge Rivera claims that his supervisor asked him to dismiss a secretary without just cause, and to replace an engineer. (See Docket No. 28 at 2.) He also alleges that he informed these employees of their dismissal, however, Belbina never fired these employees. Id. He also states, that at the time he was convalescing, his automatic salary deposit was cut off, and his short term disability benefits were never paid. Id. Attached to Rivera's administrative charge is a "document which included a broad description of the most important facts that described his ordeal with the Defendant and the causes of action he believed he had at the time." Id. The administrative charge also contains statements allegedly made by Belbina stating his intent to fire the employees if they did not fulfill the tasks assigned within the estimated time. Id. The court disagrees with Defendant's assertion that Rivera's factual predicate for his retaliation and harassment claim is not in his administrative charge. Rivera alleges (1) that he was fired in retaliation as a result of opposing a direct order from Belbina to unjustly fire several employees; (2) that Belbina allegedly harassed Rivera to return to work after his operation against his doctor's orders; and (3) that while he was convalescing his salary was cut off and his short term disability benefits were not paid. It is clear from these allegations that a retaliation and harassment claim are present in Rivera's administrative charge. See Fantini v. Salem State College, 557 F.3d 22 (1st Cir. 2009) (stating "the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.")

Defendant further contends that Rivera's failure to accommodate claim should also be dismissed for failure to exhaust administrative remedies. The ADA prohibits discrimination against a qualified individual with a disability by reason of the individual's disability in all employment practices. 42 U.S.C. §12112(a); see Katz v. City Metal Co., Inc, 87 F.3d 26, 30 (1st Cir. 1996). Under the ADA, a claimant must allege, among other requirements: (1) a disability within the meaning of the ADA; and (2) that the plaintiff is a qualified individual inasmuch as he is able to perform the essential functions of his job, with or without reasonable accommodations. See Katz,

**Civil No. 10-1876 (GAG)**          6

87 F.3d at 30. Rivera's administrative charge includes a factual basis for a claim for failure to accommodate his disability. In his administrative charge, Rivera checked the box corresponding to disability discrimination and also explained how he was allegedly pressured by Belbina to return to work against his doctor's order. (See Docket No. 28.) Rivera also explained how his salary was cut off and his disability benefits were never paid. He also stated he was able to "start working gradually." Id. In light of these allegations it is not unexpected that Rivera would later raise a claim for failure to accommodate. See Fantini, 557 F.3d at 27-28. Therefore, Rivera has included the factual basis in his EEOC charge to successfully raise a claim for retaliation, harassment and failure to accommodate in his complaint.

Accordingly, the court **DENIES** Defendant's motion to dismiss with respect to plaintiff's failure to exhaust administrative remedies.

    **B.**    **Failure to State a Claim**

        *1.*    *Title VII and PR Law 115*

In its motion to dismiss, Defendant argues that Rivera failed to allege that he opposed any unlawful practice under Title VII, or that he charged, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII. (See Docket No. 22 at 13.) In order to make a *prima facie* case of retaliation under Title VII Rivera must allege that: (1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally connected to his activity. See Fantini, 557 F.3d at 32.

In order to establish the first of these elements Rivera need not prove that the conditions in which he protested actually amounted to a violation of Title VII See Fantini, 557 F.3d at 32. He is required to have a "good faith, reasonable belief that the underlying actions of the employer violated the law." Id. Rivera alleges that: (1) Belbina continuously harassed him through unlawful

**Civil No. 10-1876 (GAG)**                              7

employment practices;[1] (2) he informed Belbina of the illegality of his actions and opposed executing them; and (3) as a result, Belbina commenced a discrimination and retaliation campaign against him.[2] Defendant argues that based on these allegations Rivera could not have had a good faith belief that Belbina's actions were motivated by discriminatory intent towards a protected characteristic. (See Docket No. 22 at 14.) Notwithstanding, Rivera contends that he believed that Belbina's real intent was to dismiss all Puerto Rican employees and later replace them with his own team from New Jersey. Rivera premises this belief on an occasion when Belbina had made disparaging remarks about Puerto Rican employees, referring to them as "lazy and stupid". He also depicted Puerto Ricans as "monkeys" during a presentation. (See Docket No. 1 at 6.)

Thus, the court finds that Rivera has alleged a good faith belief that Belbina's real intent in dismissing the employees was based upon their national origin, and therefore in violation of Title VII. Rivera alleges he refused to engage in such practice, and that as retaliation for his refusal to comply, Belbina fired him. Therefore, Rivera's complaint contains sufficient factual allegations to demonstrate a retaliation claim against the Defendant under Title VII. See Fantini, 557 F.3d at 32.

Rivera also brings a retaliation claim under Law 115, which makes it unlawful for an employer to discharge or discriminate against employees because "they offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico" P.R. Laws Ann. tit. 29 § 194(a). In its motion to dismiss, Defendant avers that Rivera's complaint does not contain a factual predicate sufficient to make out a possible claim for retaliation under Law 115.

---

[1] Rivera was asked to replace an engineer without justification, dismiss a secretary without just cause, and reduce the salary of several employees arbitrarily and without justification. (See Docket No. 1 at 5.)

[2] Belbina allegedly took away Rivera's responsibility of evaluating the employees, in order to prepare the evaluations himself arbitrarily, without personal knowledge of each of the employee's performance. (See Docket No. 1 at 5).

**Civil No. 10-1876 (GAG)** 8

Nowhere in Rivera's complaint is there an allegation that he ever offered to testify, verbally or in writing, against the defendant, before any of the forums mentioned above. Rivera's administrative charge was filed after Defendant's alleged retaliatory acts, and therefore could not constitute the necessary protected conduct under Law 115. (See Docket No. 1 at 7.) To allege a retaliation claim under Law 115, the plaintiff is required to testify or offer to testify against his employer and as a result of such action be retaliated against. In this case, Rivera did not participate in protected conduct prior to his dismissal. Therefore, Rivera's allegations are not sufficient to sustain a claim for retaliation under Law 115.

Therefore, the court **DENIES** Defendant's motion to dismiss as to the plaintiffs' Title VII retaliation claim and **GRANTS** Defendant's motion to dismiss as to the plaintiffs' Law 115 claims, dismissing the same.

### 2. *ADA and Law 44 Claim*

Defendant avers that Rivera's complaint lacks sufficient facts to meet the necessary elements for his condition to be considered a disability under the ADA since he failed to allege which major life activities were substantially limited by his medical condition. (See Docket No. 22 at 9.)

The ADA and Law 44[3] prohibit discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); P.R. Laws Ann. tit. 1, § 505. A plaintiff must prove three things in order to obtain relief under the ADA. "First, that he was disabled within the meaning of the Act. Second, that with or without reasonable accommodation he was able to perform the essential functions of his job. And third, that the employer discharged him in whole or in part because of his disability." See Katz, 87 F.3d at 7. Under the ADA the term disability with

---

[3] An employment claim for discrimination under Law 44 is coterminous to an ADA claim. See Ruiz Rivera v. Pfizer, 521 F.3d 76 (1st Cir. 2008)

**Civil No. 10-1876 (GAG)**                 9

respect to an individual means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2).

Rivera alleges that he suffers from a chronic and severe condition of acute thrombosis that affects his legs, and an abdominal tumor that affects his intestines and bladder. He avers that, despite his health conditions, he is able to perform the essential functions of his job. (See Docket No.1 at 4.) Rivera further contends that he was terminated because of his disability. However, he fails to establish which "major life activities" were limited by his disability and in what matter they were affected. Without this essential element, Rivera's pleadings are insufficient to state a valid claim under the ADA. See Del-Villar Rosario v. P.R. Department of Justice, 573 F. Supp. 2d 496, 502-03 (D.P.R. 2008) (dismissing ADA claim because plaintiff failed to identify which major life activity was limited by his impairment).

Because the plaintiffs have not sufficiently alleged that Rivera suffers from a disability within the meaning of the ADA, the court **DISMISSES** the plaintiffs' ADA and Law 44 claims.

### IV.    Conclusion

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss (Docket No. 22). Plaintiffs' claims under the ADEA and Title VII survive motion to dismiss. The court **DISMISSES** the plaintiffs' Law 115 claim, with prejudice. The court also **DISMISSES** the plaintiffs' ADA and Law 44 claims.

**SO ORDERED**

In San Juan, Puerto Rico this 4th day of April, 2011.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge